1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

18

| | |
|---|---|
| EXPERIENCE HENDRIX, L.L.C., a Washington limited liability company; AUTHENTIC HENDRIX, LLC, a Washington limited liability company,<br><br>                         Plaintiffs,<br><br>v.<br><br>THE JAMES MARSHALL HENDRIX FOUNDATION, a Washington non-profit corporation a/k/a THE JIMI HENDRIX FOUNDATION; LEON HENDRIX, an individual; KENNETH D. HAGOOD, an individual; PETE SIKOV, an individual; DIANE HENDRIX, an individual; TUNDE RA ALEEM, an individual; TAHARQA ALEEM, an individual,<br><br>                         Defendants. | No.  C03-3462Z<br><br>ORDER |

19

20

21

22

23

## INTRODUCTION

        This case comes before the Court on the Defendant's motion for partial summary judgment, docket no. 41.  The Court, having fully considered all of the papers submitted in connection with the motion, hereby GRANTS Defendant's motion for partial summary judgment and dismisses the Plaintiffs' right of publicity claim.

24

## BACKGROUND

25

        James Marshall Hendrix ("Jimi Hendrix") was a famous rock guitarist who died

26

intestate in 1970, in London, England.  Wasson Decl., docket no. 45, Ex. 1; Nelson

ORDER   -1-

Affidavit, docket no. 42, Ex. B (File no. 5670, Surrogate's Court of the County of New York, 1970).  Jimi Hendrix was domiciled in New York at the time of his death, his estate was probated in New York, and his father James A. Hendrix ("Al Hendrix") was the sole heir to the estate.  Id.  Experience Hendrix, LLC and Authentic Hendrix, LLC ("Plaintiffs") were established and incorporated by Al Hendrix before his death in 2002 and are currently under common control and ownership by family members of the late Jimi Hendrix. Complaint, docket no. 1, ¶ 6.  Plaintiffs claim that Al Hendrix assigned his rights personally and as sole heir to the estate of Jimi Hendrix to Plaintiffs by written agreements in 1995.  Id. at ¶ 7.  Plaintiffs now claim that they are the sole owners of substantially "all of the rights in Jimi Hendrix's music, name, trademarks, copyrights . . .  likeness, image, photograph, signature, voice and other personal rights."  Id. at ¶¶ 6, 7.  Plaintiff Authentic Hendrix has registered Jimi Hendrix's right of publicity in several states.  Wasson Decl., docket no. 45, ¶¶ 24, 28-32, 38-41; Ex. 17, 19-24, 28-31.

The James Marshall Hendrix Foundation ("the Foundation") is a non profit organization run by Leon Hendrix, Jimi Hendrix's brother, whose mission is to help disadvantaged children from the same Seattle neighborhoods where Jimi Hendrix was raised. Complaint, docket no. 1, Ex. 1, p. 3, p. 5.  In November, 2003, Plaintiffs discovered that the Foundation was promoting its own purposes and a specific event entitled the "James Marshall Hendrix Awards Ceremony" or the "Jimi Awards" at a fund raising event to be held on November 22, 2003.  Id. at ¶ 9; Ex. 1, p. 4.  Plaintiffs filed this action against the Foundation claiming, among other things, violations of the Washington Personality Rights Act, Wash. Rev. Code § 63.60.010. Id. at ¶¶ 46-49.

## DISCUSSION

### I.     Standard of Review

Defendant moves for partial summary judgment to dismiss the Plaintiffs' sixth claim for relief alleging violations of Washington's Personality Rights Act.  The substance of

1    Defendant's motion is that Plaintiffs have no claim for infringement of Jimi Hendrix's right

2    of publicity because no such right survived Jimi Hendrix's death and descended to Al

3    Hendrix.

4         Summary judgment is appropriate "if the pleadings, depositions, answers to

5    interrogatories, and admissions on file, together with the affidavits, if any, show that there is

6    no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a

7    matter of law." Fed. R. Civ. P. 56(c). The Court concludes that the central question in this

8    matter is a legal one: whether a right of publicity descended to Al Hendrix after Jimi

9    Hendrix's death. The parties dispute whether New York or Washington law should govern

10   in deciding this issue.

11        **II.    <u>Choice of Law Principles</u>**

12        When presented with a dispute over the choice of law, a federal court applies the

13   choice of law rules of the forum state. <u>Klaxon Co. v. Stentor Electric Mfg. Co.</u>, 313 U.S.

14   487, 496-97 (1941). Therefore, this Court applies Washington's choice of law rules. When

15   the parties dispute choice of law, there must be an actual conflict between the laws or

16   interests of Washington and another state before Washington courts will engage in a conflict

17   of laws analysis. <u>Burnside v. Simpson Paper Co.</u>, 123 Wash.2d 93, 100-01 (1994). When

18   the result of the legal analysis is different under the law of the two states, there is a "real"

19   conflict. <u>Seizer v. Sessions</u>, 132 Wash.2d 642, 648 (1997). The situation where laws or

20   interests of concerned states are not incompatible is known as a "false" conflict and the

21   presumptive local law is applied. <u>Id.</u> at 648-49. If an actual conflict exists with regard to a

22   property claim, Washington courts apply the "most significant relationship" test. <u>See</u>

23   Restatement (Second) Conflict of Laws § 222 (1971); <u>Seizer</u>, 132 Wash.2d at 650.

24   Washington courts generally follow the approach outlined in the Restatement (Second) of

25   Conflict of Laws § 6(2) (1971). <u>See id.</u> at 651-57 (applying § 6).

26

### III.   This Court's Previous Choice of Law Decision With Regards to Jimi Hendrix's Right of Publicity

There was prior litigation in this Court involving the intellectual property rights of Jimi Hendrix's musical works and right of publicity.  See Hendrix v. Branton, Case No. C93-537Z (W.D. Wash. 1995); found at Nelson Affidavit, docket no. 42, Ex. C (Order Regarding Choice of Law Issues).  In that case, this Court determined that under general choice of law principles, New York law governed whether Jimi Hendrix had a right of publicity at the time of his death and whether that right, if it existed, descended to Jimi's father.  Id. at 10-12.  A final ruling on whether, under New York law, the claimed right of publicity existed was deferred and this Court also deferred ruling as to which state's law would govern the infringement claim if a right of publicity in fact existed.  Id. at 11-12.  The case was ultimately settled before trial and the issue of whether a right of publicity existed and descended under New York law in 1970 was never decided.

In determining that New York law governed, this Court followed the general rule applied by Washington courts that the law of the state where the decedent was domiciled at death governs whether such a property right exists and descends.  See Restatement (Second) Conflict of Laws § 260 (1971); see also Joplin Enterprises v. Allen, 795 F.Supp. 349, 350 (W.D. Wash. 1992) (finding that the law of the state of domicile at time of death would determine whether the allegedly infringed property right existed at all and descended); In re Grady's Estate, 79 Wash.2d 41, 43 (1971) (finding that personal property has its situs at the domicile of the owner); In re Eilermann's Estate, 179 Wash. 15, 18 (1934) (observing that Washington courts had consistently held that the situs of intangible property is at all times at the domicile of the owner).

Plaintiffs have asked this Court to reconsider its previous choice of law decision.  The Court once again concludes that New York law governs whether a right of publicity descended to Al Hendrix.  As stated previously, the right of publicity constitutes a property right.  See Joplin, 795 F. Supp. at 350.  "Whether or not a right of such a nature exists is a

ORDER   -4-

question of personal property law."  Hendrix, Case No. C93-537Z, Order Regarding Choice

of Law Issues, docket no. 1551, at 11; see also Acme Circus Operating Co. v. Kuperstock,

711 F.2d 1538, 1541 (11th Cir. 1983).  Under general choice of law principles, the Court

looks to the law of New York, where Jimi Hendrix was domiciled at the time of his death, to

determine whether the right existed.  Joplin, 795 F.Supp. at 350.  Under New York law, it is

the law at the time of death that determines what property is in the estate and whether it

passes to descendants.  People v. Powers, 147 N.Y. 104, 109 (N.Y. 1895).  Thus, the Court

concludes that it is New York law at the time of Jimi Hendrix's death in 1970 that governs

whether Jimi Hendrix had a right of publicity, and whether that right, if it existed, descended

to Al Hendrix.

### IV.   Existence and Descendibility of a "Right of Publicity" under New York Law in 1970

Prior to 1970 and up to present time, New York has recognized a statutory "right to

privacy" for living persons that provides for civil damages under certain circumstances when

the right to privacy is infringed.  See N.Y. Civ. Rights Law § 50 (McKinney 2005)

(providing that "[a] person, firm or corporation that uses for advertising purposes, or for the

purposes of trade, the name, portrait or picture of any living person without having first

obtained the written consent of such person . . . is guilty of a misdemeanor."[1]); see also N.Y.

Civ. Rights Law § 51 (McKinney 2005).  This statutory right to privacy has been

consistently construed as being limited on its face to living people; accordingly, any rights

provided by the statute have been construed as dying with the person.  Pirone v. MacMillan,

Inc., 894 F.2d 579, 586 (2d Cir. 1990).

Prior to Jimi Hendrix's death in 1970, some New York state court decisions seemed

to recognize a separate common law "right of publicity" distinct from this statutory right to

privacy.  See, e.g., Madison Square Garden Corp. v. Universal Pictures Co., 7 N.Y.S.2d 845,

---

[1]This portion of N.Y. Civ. Rights Law § 50 was last amended in 1909.

ORDER   -5-

850-52 (App. Div. 1938) (finding that the plaintiff corporation clearly had a property right in its good name, its reputation and its good will in an action brought in equity for unfair competition).  In 1953, the Second Circuit Court of Appeals sitting in diversity recognized a New York common law right of publicity separate from the New York statutory right of privacy.  See Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc., 202 F.2d 866, 868  (2d Cir. 1953).

> We think that, in addition to and independent of that right of privacy (which in New York derives from statute), a man has a right in the publicity value of his photograph . . .  Whether it be labeled a 'property' right is immaterial; for here, as often elsewhere, the tag 'property' simply symbolizes the fact that courts enforce a claim which has pecuniary worth.  This right might be called a 'right of publicity.' . . . We think the New York decisions recognize such a right.

Id. at 868 (internal citations omitted).

In this case, Plaintiffs argue that the law that actually existed at the time of Jimi Hendrix's death was the rule established in Haelan which provided for a descendible common law right of publicity separate and apart from the statutory right to privacy.  Id. However, this Court is persuaded that the holding in Haelan did not correctly interpret New York law.  The "ultimate source for state law adjudication in diversity cases is the law as established by the constitution, statutes, or authoritative court decisions of the state."  See Factors Etc., Inc. et al. v. Pro Arts, Inc., 652 F.2d 278, 283 (2d Cir. 1981).  New York State courts, up to and including the time of Jimi Hendrix's death, continued to assert that any proprietary right of publicity was limited to the statutory right to privacy applicable only to living persons.  See, e.g., Flores v. Mosler Safe Co., 7 N.Y.S.2d 276, 280 (N.Y. 1959) (recognizing a right to privacy rested solely in and limited to the statutory right (citing Roberson v. Rochester Folding Box Co., 171 N.Y. 538 (N.Y. 1902))); Spahn v. Julian Messner, Inc., 250 N.Y.S.2d 529, 531-32 (N.Y. Sup. Ct. 1964), aff'd, 260 N.Y.S.2d 451 (N.Y. App. Div. 1965), aff'd, 18 N.Y.2d 324 (N.Y. 1966), vacated, 387 U.S. 239 (1967), reargued, 21 N.Y.2d 124 (N.Y. 1967), appeal dismissed, 393 U.S. 1046 (1969) (stating that

New York law recognizes Article 5 of the Civil Rights Law as the fountainhead of the right

to legal redress for the invasion, appropriation and commercial exploitation of the

individual's personality); Rosemont Enterprises, Inc. v. Random House, Inc., 294 N.Y.S.2d

122, 129 (N.Y. Sup. Ct. 1968), aff'd, 301 N.Y.S.2d 948 (N.Y. App. Div. 1969)

(differentiating between a right to privacy cause of action and a right of publicity cause of

action but analyzing both within the scope of the statute as to when a wrong against the right

is actionable).

   In addition, in 1984, the New York Court of Appeals decided Stephano v. News

Group Publications, Inc., 64 N.Y.2d 174 (N.Y. 1984) and stated that "[s]ince the 'right of

publicity' is encompassed under the Civil Rights Law as an aspect of the right of privacy,

which, as noted, is exclusively statutory in this state, the plaintiff cannot claim an

independent common-law right of publicity." Id. at 183.  The Second Circuit Court of

Appeals relied on the Stephano decision in a later right of publicity case and found that the

Civil Rights Law and its right to privacy preempted any common law right of publicity

action by a celebrity's heirs.  Pirone, 894 F.2d at 586.  Following these decisions, New York

courts have consistently refused to recognize claims made by celebrities' heirs for violations

of a common law right of publicity.  See, e.g., James v. Delilah Films, Inc., 544 N.Y.S.2d

447, 450 (N.Y. Sup. Ct. 1987); Antonetty v. Cuomo, 502 N.Y.S.2d 902, 906 (N.Y. Sup.

Ct.1986).  For these reasons, the Court finds that New York's Civil Rights Law and its

statutory right to privacy preempt any common law right of publicity action and concludes

that no right of publicity descended to Al Hendrix in 1970.

## V.    The Washington Personality Rights Act

   In 1998, the Washington Legislature passed the Washington Personality Rights Act

("the Act"), Wash. Rev. Code § 63.60.030, which provides that:

> Every individual or personality . . . has a property right in the use of his or her
> name, voice, signature, photograph, or likeness, and such right shall be freely

ORDER   -7-

transferable, assignable, and licensable, in whole or in part, by contract or inter vivos transfer, and shall not expire upon the death of the individual or personality . . . but shall pass: (a) Under the deceased individual's or personality's . . . last will and testament or, if none, then under the laws of intestate succession applicable to interests in intangible personal property of the individual's . . . domicile . . .

Wash. Rev. Code § 63.60.030.  The Act defines a "deceased personality" as: "any individual whose name, voice, signature, photograph, or likeness had commercial value at the time of his or her death . . . [and] includes, without limitation, any such individual who has died within fifty years before January 1, 1998."  Wash. Rev. Code § 63.60.020.  The parties do not dispute that Jimi Hendrix would fall under the statute's definition of a deceased personality because his name, voice, signature, photograph, or likeness clearly had commercial value at the time of his death.  <u>See</u> Defendant's Motion for Partial Summary Judgment, docket no. 41, p. 2, ln. 9; Plaintiffs' Response Brief, docket no. 44, p. 15, lns. 10-11.  Plaintiffs argue that the Act should apply in this case and that under the Act, a right of publicity descended to Al Hendrix upon Jimi Hendrix's death.

The Court concludes that the Act is not applicable in this case.  Because the Act does not contain on its face an express choice of law provision, the Act is not a statutory directive as to the choice of law to be applied in a right of publicity case.  <u>See</u> Restatement (Second) of Conflict of Laws § 6(1) (1971); <u>see also</u> <u>Cairns v. Franklin Mint Co.</u>, 292 F.3d 1139, 1146-49 (9th Cir. 2002).  In addition, Jimi Hendrix was domiciled in New York at the time of his death and New York clearly has a greater interest in what property rights it chooses to recognize in its domiciliaries.  Accordingly, Washington does not have such a dominant interest in solving the problem presented by this case that the Court should ignore the traditional choice of law principles and apply the Washington statute.  <u>See</u> <u>Matter of Estate of Cook</u>, 40 Wash.App. 326, 329 (1985).  Finally, after weighing the most significant relationship factors to determine if the Act changes its original choice of law analysis, this Court concludes that New York has the most significant relationship to the issue presented

1    here; whether an intangible personal property right existed and descended in a New York

2    domicilary in 1970.  See Restatement (Second) of Conflict of Laws § 6(2) (1971).

3    Washington courts have repeatedly recognized the significant relationship a state has to

4    issues regarding the descent of personal property in repeatedly following the traditional rule

5    that the law governing a personalty, even an intangible personalty, is the law of the state

6    where the person is domiciled.  See, e.g., Joplin, 795 F.Supp. at 350; In re Grady's Estate, 79

7    Wash.2d at 41; In re Eilermann's Estate, 179 Wash. at 18.

8    ## CONCLUSION

9        Based on the foregoing, the Court GRANTS the Defendant's motion for partial

10   summary judgment, docket no. 41, and dismisses the Plaintiffs' sixth claim for relief in this

11   action.

12       IT IS SO ORDERED.

13       DATED this 15th day of April, 2005.

14

15

16                                         Thomas S. Zilly

17                                         United States District Judge

18

19

20

21

22

23

24

25

26

ORDER   -9-