UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EXPERIENCE HENDRIX, L.L.C., a Washington limited liability company; AUTHENTIC HENDRIX, LLC, a Washington limited liability company,

Plaintiffs,

v.

THE JAMES MARSHALL HENDRIX FOUNDATION, a Washington non-profit corporation a/k/a THE JIMI HENDRIX FOUNDATION; LEON HENDRIX, an individual; KENNETH D. HAGOOD, an individual; PETE SIKOV, an individual; DIANE HENDRIX, an individual; TUNDE RA ALEEM, an individual; TAHARQA ALEEM, an individual,

Defendants.

No. C03-3462Z

ORDER

This matter comes before the Court on Defendants' Motion for Attorney's Fees and Costs, docket no. 62, and Plaintiffs' Surreply Requesting the Court to Strike Certain Materials Filed with Defendants' Reply and Portions of Defendants' Reply Brief, docket no. 85. Having considered the briefs and declarations in support of and in opposition to the motions, the Court now GRANTS IN PART and DENIES IN PART Defendants' Motion for Attorney's Fees and Costs, docket no. 62, and GRANTS Plaintiffs' Surreply, docket no. 85, and enters the following Order.

ORDER  -1-

## BACKGROUND

### History of Intellectual Property Rights of Al Hendrix and Leon Hendrix

James Marshall ("Jimi") Hendrix died intestate in 1970, and James Allen ("Al") Hendrix, Jimi Hendrix's father, was the sole heir to the estate. Wasson Aff., docket no. 3, ¶ 3, Ex. A at 1.

On March 8, 1988, Al executed the following grant (the "1988 Grant") to Jimi Hendrix's brother, Leon Hendrix ("Leon"): "I, James A. Hendrix, do hereby give permission to my son, Leon Hendrix, and/or The James (Jimi) Marshall Hendrix Foundation, the right to use the name James (Jimi) Marshall Hendrix for non profit charitable causes only." Nelson Decl., docket no. 64, Ex. F.

Following a state court lawsuit between Al and Leon, an "Amended Agreement" was signed in December 1996. Wilson Decl., docket no. 74, ¶ 4 and Ex. D. Paragraph Ten of the Amended Agreement establishes in part that Al's companies Experience Hendrix LLC ("Experience") and Authentic Hendrix LLC ("Authentic") (collectively "Plaintiffs") are "the sole authorized licensors of Jimi Hendrix performances, songs and publicity rights" and that Authentic "holds exclusive ownership of Jimi Hendrix name, image and likeness for commercial exploitation." Id. Ex. D at 3-4, ¶ 10. Paragraph Ten expressly states that "Leon will not . . . exploit or attempt to exploit Jimi Hendrix's name, image or likeness on merchandise of any kind, without a written license from Authentic." Id. Paragraph Eleven states that Experience and Authentic "shall be entitled to injunctive and other equitable relief" if Leon breaches the provisions of Paragraph Ten. Id. Ex. D at 4, ¶ 11. The Amended Agreement does not mention the 1988 Grant and does not address Leon's right to use Jimi Hendrix's name for charitable purposes.

### History of the James Marshall Hendrix Foundations

Leon created The James Hendrix Foundation in 1987. Wilson Decl., docket no. 74, Ex. A. It was dissolved in 1991. Id. Ex. B ¶ 9 (L. Hendrix. Decl.). On January 28, 2003,

ORDER  -2-

Leon incorporated a new non-profit corporation called The James Marshall Hendrix Foundation (the "Foundation"). Id. Ex. E.

### Plaintiffs' Knowledge of the November 22, 2003 Fundraiser

The Foundation held a fundraiser for the Foundation's charitable works on November 22, 2003. Plaintiffs assert that they became aware of the Foundation's fundraiser in early November 2003, when members of the public called them to inquire about their connection to the event. Wilson Decl., docket no. 74, Ex. F ¶ 12 (Janie Hendrix Decl.). Defendants have failed to show that Plaintiffs were on notice of the fundraiser prior to November 2003. The correspondence between the Foundation and Plaintiffs' attorney, Mr. Reed Wasson, in January and February 2003, only shows Plaintiffs' knowledge of the Foundation's formation and the existence of the 1998 Grant. Wasson Decl., docket no. 73, ¶¶ 7-8 and Ex. A; Nelson Decl., docket no. 64, Exs. H, I and J. The correspondence between the parties does not mention the fundraiser planned for November 2003. See id.

### The Present Lawsuit and Plaintiffs' Motion for a TRO

On November 10, 2003, Plaintiffs sent the Foundation's attorney and Clear Channel Radio, the Foundation's radio sponsor of the fundraiser, a cease and desist letter, asking them to stop using Plaintiffs' trademarks in the promotion of the fundraiser. Nelson Decl., docket no. 64, Ex. N.

On November 13, 2003, Plaintiffs filed suit against The James Marshall Hendrix Foundation, Leon Hendrix, and other individuals (collectively "Defendants"), alleging violations of the Lanham Act, 15 U.S.C. § 1501 et seq. (First through Fourth Causes of Action), common law trademark infringement (Fifth Cause of Action), and the Washington Personality Rights Act (the "PRA") (Sixth Cause of Action). Compl., docket no. 1, at 5-13, ¶¶ 16-50. These allegations arose out of the Foundation's use of Jimi Hendrix's name, signature and image on its website and in its promotional brochure promoting the November 22, 2003 fundraiser. Davis Decl., docket no. 75, ¶ 10 and Ex. G.

On November 14, 2005, Plaintiffs filed a motion for a temporary restraining order ("TRO") and a preliminary injunction, seeking to enjoin the Defendants' use of Plaintiffs' trademarks and personality rights in connection with the Foundation's November 22, 2003 fundraiser.  Docket no. 2.  On November 20, 2003, the Court denied Plaintiffs' motion for a TRO and preliminary injunction.  Docket no. 16.

**Subsequent Activities of the Parties**

The activities of the parties following the Court's denial of the TRO have implications for the present motion.  In June 2004, the Court struck the trial date based upon the parties' representations that they had been engaged in mediation since February 2004 and were committed to reaching a "global" solution that would have a more lasting effect among the parties, who have an extensive history of litigation in both federal and state court.  Docket no. 27.  This mediation was ultimately unsuccessful.

In November 2004, Plaintiffs filed a motion to voluntarily dismiss the case without prejudice, which Defendants opposed and which the Court denied.  Docket nos. 33, 38.  At the same time, Defendants alleged two counterclaims against Plaintiffs: (1) breach of contract, and (2) intentional tortious interference.  Docket no. 35.  On January 5, 2005, the Court set a trial date of February 23, 2006.  Docket no. 40.

On January 13, 2005, Defendants moved for partial summary judgment, seeking the dismissal of Plaintiffs' Sixth Cause of Action under the Washington PRA.  Docket no. 41. On April 15, 2005, the Court granted Defendants' motion.  Order, docket no. 47.

In May 2005, Plaintiffs filed a motion to voluntarily dismiss the First through Fifth Causes of Action with prejudice, which the Court granted on July 27, 2005 despite opposition from Defendants.  See docket nos. 48-52.  In their opposition brief, Defendants had asked the Court to declare this case to be an "exceptional case" under the Lanham Act and award attorney's fees.  Docket no. 49.  In its Order of dismissal, the Court did not rule on the Lanham Act issue.  Order, docket no. 52.

ORDER  -4-

On August 24, 2005, the Court dismissed all claims against the *individual* defendants with prejudice pursuant to a stipulation of the parties. Docket no. 59. On August 31, 2005, the Court dismissed Defendants' counterclaims <u>without</u> <u>prejudice</u> pursuant to a stipulation of the parties. Docket no. 60. On September 16, 2005, the Court entered a judgment in the case. Docket no. 61.

**Defendants' Motion for Attorney's Fees, docket no. 62**

Defendants now move for $346,693.34 in attorney's fees – for $123,353.15 under the Washington PRA and for $275,340.19 under the Lanham Act. Defs.' Mot., docket no. 62, at 11. They state that $52,000 applies to the defense of both sets of claims. Id. Plaintiffs oppose the motion and argue that any award under the Washington PRA should be limited to $22,316. Docket no. 70.

**Plaintiffs' Surreply, docket no. 85**

In a surreply, docket no. 85, Plaintiffs move to strike material that Defendants submitted with their reply brief.

# DISCUSSION

**I.      Plaintiffs Assert Defendants' Motion Is an Untimely Motion for Reconsideration.**

Plaintiffs' first argument in opposition to the motion for attorney's fees is that Defendants' motion should be construed as an untimely motion for reconsideration. Plaintiffs argue that the Court previously denied the Defendants' request to declare this an exceptional case under the Lanham Act and award attorney's fees. While it is true that Defendants made such a request, the parties did not brief, and the Court did not decide, the attorney's fees issue under the Lanham Act. Docket nos. 48-52. Thus, the Court does not construe the present motion as a motion for reconsideration.

ORDER   -5-

## II. Defendants Seek Attorney's Fees Under the Washington PRA.

### A. Statutory Fees Provision

The Washington PRA provides:

> The prevailing party may recover reasonable attorney's fees, expenses, and court costs incurred in recovering any remedy or defending any claim brought under this section.

RCW 63.60.060(5). An award of attorney's fees and costs under the Washington PRA is discretionary. See Frank v. Fischer, 108 Wn.2d 468, 477 (1987) (citing Walsh Servs. v. Feek, 45 Wn.2d 289, 298 (1954) (holding that the "may" language in a statutory attorney's fee provision does not require the court to award attorney's fees)). The "prevailing party" is usually one who receives judgment in his or her favor. See Crest Inc. v. Costco Wholesale Corp., __Wn. App. __, 115 P.3d 349, 354 (Div. 1 2005) (contract case awarding attorney's fees under RCW 4.84.330).

Because Defendants successfully defended Plaintiffs' Washington PRA claim and obtained a judgment in their favor, they are the "prevailing party." Plaintiffs argue that the Court should not award attorney's fees because Plaintiffs brought this claim in good faith. Good faith is irrelevant because the Washington PRA authorizes attorney's fees to a "prevailing party," not only to a party burdened by litigation brought in bad faith. Plaintiffs next argue that attorney's fees are not warranted because Plaintiffs attempted to voluntarily dismiss the claims prior to Defendants' motion for summary judgment on the claim. This argument is not persuasive because the voluntary dismissal that Plaintiffs are referring to is the first one in which they offered to dismiss the case <u>without prejudice</u>. Defendants were entitled to seek an adjudication on the merits. Accordingly, the Court awards attorney's fees to Defendants under the Washington PRA.

### B. Amount of Award

The Court applies the "lodestar" method for calculating attorney's fees. See Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597 (1983) (applying lodestar method for

state law claims); Crest Inc., 115 P.3d at 351 (same). The Court calculates the "lodestar" by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. Bowers, 100 Wn.2d at 597. To determine the number of hours reasonably expended in the litigation:

> [T]he attorneys must provide reasonable documentation of the work performed. This documentation need not be exhaustive or in minute detail, but must inform the court, in addition to the number of hours worked, of the type of work performed and the category of attorney who performed the work (i.e., senior partner, associate, etc.). The court must limit the lodestar to hours reasonably expended, and should therefore discount hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time.

Id. Where the attorneys in question have an established rate for billing clients, that rate will likely be a reasonable rate. Id. After the lodestar has been calculated, the Court may consider the necessity of adjusting it to reflect factors not considered up to this point. Id. at 598.

Defendants seek $123,353.15 in attorney's fees and costs under the Washington PRA, representing work performed by three law firms. Defs.' Mot., docket no. 62, at 11. The attorneys' rates were reasonable and in some cases below market. Keller Decl., docket no. 63, ¶¶ 5, 10, 15.

Plaintiffs challenge the Defendants' calculations of the number of hours expended defending the Washington PRA claim. The three firms have submitted detailed records indicating the number of hours worked, the type of work performed, and the attorney who performed the work. See Simburg Decl., docket no. 66, Ex. B; Nelson Decl., docket no. 64, Ex. B; Gheen Decl., docket no. 65, Ex. A. Defendants have further provided the opinion of an expert who concludes that the three law firms expended a reasonable number of hours on the case. Keller Decl., docket no. 63, ¶¶ 6, 11, 16. This expert opinion does not address whether each firm's proposed allocation for work defending the Washington PRA claim is reasonable. See id.

ORDER   -7-

The "Simburg" firm has represented the Foundation since November 2003. Simburg Decl., docket no. 66. The "Betts" firm has represented the Foundation, on behalf of the Foundation's insurer, since April 2004. Nelson Decl., docket no. 64, ¶ 4 and Ex. B at 1. The "Bullivant" firm has represented the individual defendants since April 2004. Gheen Decl., docket no. 65, Ex. A at 3. Of the $123,353.15 in fees and costs sought by Defendants under the Washington PRA, the Simburg firm seeks $57,000.00, the Betts firm seeks $52,727.38, and the Bullivant firm seeks $13,626.15. Simburg Decl. ¶ 11; Nelson Decl. ¶ 9; Gheen Decl. ¶ 7. Defendants request these amounts based on their attorneys' estimates of time spent defending the Washington PRA claim. See id.

Plaintiffs argue that the actual time spent defending the Washington PRA claim totals $22,316.00. Wilson Decl., docket no. 74, Ex. K. Plaintiffs arrive at this figure by adding up the time entries that relate to Defendants' partial summary judgment motion. They argue that "no ratio analysis is needed" because Defendants' "exquisitely detailed time records are more than adequate to calculate the exact amount spent in defense of the Personality Rights Act claims." Pls.' Opp'n, docket no. 70, at 19. Defendants' reply brief points out two summary judgment entries that Plaintiffs missed, which would add $507.50 to the total. Suppl. Decl. Nelson, docket no. 81, Ex. H at 3. Defendants also argue that other time spent analyzing Plaintiffs' marks, for example, would have been expended if Plaintiffs initiated just one claim under the Washington PRA, Lanham Act or common law trademark claim instead of six. Id. Ex. H at 6 (1.7 hours on June 22, 2004 and 6.4 hours on June 29, 2004, which would add $1417.50 to the total).

The Court concludes that Defendants' ratio analyses are unsupported by the record and instead adopts Plaintiffs' approach to awarding fees. Accordingly, the Court awards $22,316.00 in fees for the undisputed time spent on the partial summary judgment motion. This award covers $18,398.50 incurred by the Betts firm, $1,262.50 incurred by the Bullivant firm and $2,655.00 incurred by the Simburg firm. Wilson Decl., docket no. 74,

ORDER -8-

Ex. K at 6. The Court awards an additional $507.50 that Defendants pointed out in their reply brief was incurred by the Betts firm on the partial summary judgment motion.

In addition, the Court seeks to award fees and costs to acknowledge Defendants' work in defending the Washington PRA claim outside the partial summary judgment motion. For instance, Defendants defended the Washington PRA claim during the TRO proceedings. Because it is impossible to segregate the hours expended in defending the Washington PRA claim for Defendants' work outside the partial summary judgment motion, the Court has calculated one-sixth[1] of the total fees and costs incurred in the litigation, less the partial summary judgment fees already awarded, as a starting point. These fees and costs total $58,612.52, as shown in Table 1.

**Table 1. Calculation of One-Sixth of Fees and Costs Incurred**

| **Firm** | **Total Fees and Costs Incurred** | **Total Fees and Costs Less Summary Judgment Fees** | **One-Sixth of Fees and Costs** |
|---|---|---|---|
| **Betts** | $263,636.92 (Nelson Decl. ¶ 9) | $244,730.92 [263,636.92 - 18,906.00] | $40,788.49 [244,730.92 / 6] |
| **Bullivant** | $48,669.69 (Gheen Decl. ¶ 6) | $47,404.19 [48,669.69- 1,262.50] | $7,900.70 [47,404.19 / 6] |
| **Simburg** | $62,195.00 (Simburg Decl. ¶ 10) | $59,540.00 [62,195.00-2655.00] | $9,923.33 [59,540.00 / 6] |
| **TOTAL** | | | **$58,612.52** |

The Court discounts these fees and costs by fifty percent because Defendants spent unproductive time on unnecessary pleadings. See Bowers, 100 Wn.2d at 597. For example, Defendants needlessly opposed Plaintiffs' motion to voluntarily dismiss with prejudice the

---

[1] The Washington PRA claim was one of six alleged causes of action.

ORDER  -9-

claims remaining in the lawsuit. See Docket no. 49. Moreover, the Court applies the fifty percent discount because Defendants incurred a significant portion of the fees and costs after the Court's Order of April 15, 2005 dismissing the Washington PRA claim. After applying a fifty percent discount, these fees and costs total $29,306.26, as shown in Table 2. In sum, the Court awards $52,129.76 in fees and costs to Defendants pursuant to RCW 63.60.060(5) for prevailing on the Washington PRA claim, as calculated below:

**Table 2.  Calculation of the Total Fees and Costs Awarded**

| **Firm** | **Partial Summary Judgment Fees** | **One-Sixth of Fees & Costs Discounted by 50%** | **Total Fees and Costs Awarded** |
|---|---|---|---|
| **Betts** | $18,906.00 | $20,394.25 | $39,300.25 |
| **Bullivant** | $1,262.50 | $3,950.35 | $5,212.85 |
| **Simburg** | $2,655.00 | $4,961.66 | $7,616.66 |
| **TOTAL AWARDED** | $22,823.50 | $29,306.26 | **$52,129.76** |

### III.     Defendants Seek Attorney's Fees Under the Lanham Act.

####     A.     Statutory Fees Provision

The Lanham Act provides:

> The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a)(3). Defendants are the "prevailing party" as a result of Plaintiffs' voluntary dismissal with prejudice. See Zenith Ins. Co. v. Breslaw, 108 F.3d 205, 207 (9th Cir. 1997) (abrogated on other grounds)). The key issue here is whether the case is "exceptional."

####     B.     The "Exceptional" Issue

Defendants argue that Plaintiffs' case is "exceptional" because it is either "vexatious," "groundless," "unreasonable," or "pursued in bad faith." See Cairns v. Franklin Mint Co., 292 F.3d 1139, 1156 (9th Cir. 2002); Stephen W. Boney, Inc. v. Boney Services, Inc.,127

ORDER   -10-

1  F.3d 821, 827 (9th Cir. 1997) (a showing of bad faith is not required).  For the reasons
2  described below, Plaintiffs' case is not "exceptional."  The Court does not award attorney's
3  fees under the Lanham Act.

4     **1.**     **Vexatious**

5      There is no Ninth Circuit case defining vexatious under 15 U.S.C. § 1117(a)(3).
6  Defendants rely upon a D.C. Circuit case, <u>Noxell Corporation v. Firehouse No. 1 Bar-B-Que</u>
7  <u>Restaurant</u>, 771 F.2d 521 (D.C. Cir. 1985), which does not expressly define vexatious but
8  which does ground its decision to award fees on behavior other than "bad faith."  In <u>Noxell</u>,
9  the plaintiff, a Maryland corporation, filed a trademark infringement action against a small
10 California company in the District of Columbia even though less than 1.5% of defendant's
11 sales were in D.C.  <u>See</u> 771 F.2d at 523 (quoting "<u>Noxell I</u>," 760 F.2d 312, 314 (D.C. Cir.
12 1985)).  The D.C. Circuit ordered that the case be dismissed because plaintiff's choice of
13 venue was "unreasonable," "contrary to established law," and "totally at odds with the
14 Supreme Court's unambiguous instruction."  <u>Id.</u>  In its ruling on defendant's motion for
15 attorney fees under the Lanham Act, the D.C. Circuit awarded fees because the case involved
16 "more than a hint of economic coercion" and because plaintiff engaged in "groundless
17 argument."  <u>Id.</u> at 526-27.  The D.C. Circuit noted that the purpose of the fee provision was
18 "to discourage suits designed to harass."  <u>Id.</u> at 526.

19     Defendants argue <u>Noxell</u> is analogous to the present case on two factual bases: first,
20 the timing of Plaintiffs' action "was similarly coercive and imposed hardship on the fledgling
21 Foundation;" and, second, Plaintiffs eliminated sponsorship and publicity for the fundraiser
22 by sending a cease and desist letter to Clear Channel Radio.  Defs.' Mot., docket no. 62, at
23 7-8.

24     Plaintiffs argue that they "took no comparable action" to the plaintiff in <u>Noxell</u>.  Pls.'
25 Response, docket no. 70, at 11.  They argue that they took immediate and reasonable steps to
26 protect their rights under the Lanham Act.  They dispute that they knew about the fundraiser

ORDER   -11-

prior to November 2003, and assert that they acted as soon as they found out about the event by sending the cease and desist letter and then filing the lawsuit. Plaintiffs assert that they sent a copy of the cease and desist letter to Clear Channel Radio because the Foundation's website led them to believe that Clear Channel Radio was a partner with the Foundation and perhaps a co-infringer of Plaintiffs' trademarks.

Plaintiffs' conduct was not vexatious. It was Plaintiffs' prerogative to file the lawsuit when they did. Contrary to the plaintiff's venue choice in Noxell, there was nothing illegal about the timing of the Plaintiffs' lawsuit in this case. The evidence does not show that Plaintiffs knew about the fundraiser prior to November 2003; even if they did, that evidence would be insufficient to conclude that their behavior was "vexatious." Similarly, sending a letter to Clear Channel Radio was reasonable behavior under the circumstances. Plaintiffs have submitted the expert opinion of Marshall J. Nelson, a partner at Davis Wright Tremaine LLP who has practiced law for over thirty years and who specializes in intellectual property and media law. Nelson Decl., docket no. 72, ¶ 1 and Ex. 1. Having reviewed the case, Mr. Nelson concludes that Plaintiffs' filing of the lawsuit and the motion for a TRO, and the copying of the cease and desist letter to Clear Channel, were reasonable actions for a trademark owner to take, especially given that trademark law compels owners to act to prevent confusion from the unauthorized use of a trademark or risk claims of acquiescence, waiver, laches or abandonment. Nelson Decl., Ex. 2 at 2.

### 2. **Groundless and Unreasonable**

Defendants argue that Plaintiffs' Lanham Act claims were groundless and unreasonable[2] because "Plaintiffs offered no reasonable basis to doubt the validity of the Grant" and "Plaintiffs ultimately agreed their Lanham Act claims lacked merit when they voluntarily withdrew these claims with prejudice." Defs.' Mot., docket no. 62, at 8-9.

---

[2] Defendants do not attempt to distinguish their "groundless" argument from their "unreasonable" argument even though these are separate bases for finding a case to be "exceptional" under the Lanham Act. See Cairns, 292 F.3d at 1156.

ORDER  -12-

Plaintiffs argue that their claims were not frivolous, putting forth many reasons why they doubted the validity of the 1988 Grant. Pls.' Response, docket no. 70, at 12-15. Plaintiffs also argue that their dismissal is not an admission that the claims were groundless. Id. at 15-16. Defendants did not respond to Plaintiffs' arguments in their reply. Defs.' Reply, docket no. 81. Plaintiffs have put forth tenable arguments in support of their claims that satisfy the Court that, for the purposes of Defendants' attorney's fees motion, Plaintiffs' claims were not "groundless" or "unreasonable."

### 3. **Bad Faith**

Defendants argue that Plaintiffs' claims were brought in bad faith, as shown by "Plaintiffs' misstatements regarding the scope of [their] intellectual property rights in Jimi." Defs.' Mot., docket no. 62, at 9. Specifically, Defendants object to Plaintiffs' claim of "exclusive" ownership in the Jimi name and argue that Plaintiffs should have mentioned the 1988 Grant in the cease and desist letter that was copied to Clear Channel. Id. This argument is not supported by the record; Plaintiffs discussed the 1988 Grant and the reasons why they doubted its application to the present set of facts in the cease and desist letter. See Nelson Decl., docket no. 64, Ex. N at 4.

Defendants argue this case is similar to a Second Circuit case in which the plaintiff took opposite positions about the existence of a trademark in two different lawsuits. See Universal City Studios, Inc. v. Nintendo Co., 797 F.2d 70 (2d Cir. 1986). That case has no applicability here because Plaintiffs have not taken any contradictory positions.

Defendants also argue that Plaintiffs should have pointed out that the Washington PRA contains an exemption from liability for advertisers. This argument has no bearing on whether Plaintiffs filed the present lawsuit against Defendants in bad faith. Plaintiffs had no obligation to advise Clear Channel of its legal rights and did not sue Clear Channel once Plaintiffs learned that it was not a co-infringer. Plaintiffs did not bring the lawsuit in bad faith.

### IV. Plaintiffs' Surreply, docket no. 85

Defendants filed new declarations with their reply brief and made new factual assertions in their reply brief regarding the timing of Plaintiffs' knowledge of the November 2003 fundraiser. Plaintiffs move to strike this material, docket no. 85. Even if Plaintiffs knew about the event in January or February 2003, that evidence would be insufficient to conclude that their behavior was "vexatious," "groundless," "unreasonable" or "in bad faith." The Court GRANTS Plaintiffs' Surreply Requesting the Court to Strike Certain Materials Filed with Defendants' Reply and Portions of Defendants' Reply Brief, docket no. 85.

### CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Attorney's Fees and Costs, docket no. 62, and awards $52,129.76 in fees and costs to Defendants pursuant to RCW 63.60.060(5). The Court does not award any fees and costs under the Lanham Act because the case is not "exceptional" under 15 U.S.C. § 1117(a)(3).

The Court GRANTS Plaintiffs' Surreply Requesting the Court to Strike Certain Materials Filed with Defendants' Reply and Portions of Defendants' Reply Brief, docket no. 85.

The Clerk is directed to enter a Supplemental Judgment in favor of Defendants for $52,129.76 against Plaintiffs.

IT IS SO ORDERED.

DATED this 4th day of November, 2005.

*Thomas S. Zilly*
Thomas S. Zilly
United States District Judge

ORDER -14-